**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

BENCHMARK ELECTRICAL
SOLUTIONS, INC.,

      Plaintiff,

v.                                 No. CV 18-436 MV/CG

NATIONAL SPECIALTY
INSURANCE COMPANY, et al.,

      Defendants.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER** is before the Court on Plaintiff Benchmark Electrical Solutions, Inc.'s ("Benchmark") *Motion for Default Judgment on First Cause of Action Against Defendant DanCar Energy Construction, LLC.* ("Motion for Default Judgment"), (Doc. 36), filed May 21, 2019; Defendant National Specialty Insurance Company's ("NSIC") *Response in Opposition to Plaintiff's Motion for Default Judgment on First Cause of Action Against Defendant DanCar Energy Construction, LLC.* ("NSIC's Response"), (Doc. 39), filed June 4, 2019; Defendant DanCar Energy Construction LLC's ("DanCar") *Response in Opposition to Plaintiff's Motion for Default Judgment on First Cause of Action Against Defendant DanCar Energy Construction LLC.* ("DanCar's Response"), (Doc. 40), filed June 4, 2019; Benchmark's *Reply to National Insurance Company's Response in Opposition to Plaintiff's Motion for Default Judgment on First Cause of Action Against Defendant DanCar Energy Construction, LLC.* ("Reply to NSIC's Response"), (Doc. 44), filed June 18, 2019; and Benchmark's *Reply to DanCar Energy Construction LLC's Response in Opposition to Plaintiff's Motion for Default Judgment on First Cause of Action Against Defendant DanCar Energy Construction, LLC.* ("Reply to

DanCar's Response"), filed June 18, 2019.

In addition, this matter is also before the Court on Defendants' *DanCar Energy Construction LLC and National Specialty Insurance Company's Motion to Vacate Default* ("Motion to Vacate Default"), (Doc. 41), filed June 4, 2019; Benchmark's *Response in Opposition to Defendant's DanCar Energy Construction LLC and National Specialty Insurance Company's Motion to Vacate Default* ("Response to Motion to Vacate Default"), (Doc. 43), filed June 18, 2019; and *Defendants DanCar Energy Construction LLC and National Specialty Insurance Company's Reply in Further Support of Motion to Vacate Default*, (Doc. 48), ("Reply to Motion to Vacate Default"), filed July 2, 2019.

On June 5, 2019 and June 21, 2019, United States District Judge Martha Vazquez referred both pending motions to the undersigned to make findings of fact, conduct legal analysis, and recommend an ultimate disposition. (Doc. 42); (Doc. 47). After considering the parties' filings, the record, and the relevant law, the Court **RECOMMENDS** that Plaintiff Benchmark Electrical Solutions, Inc.'s *Motion for Default Judgment on First Cause of Action Against Defendant DanCar Energy Construction, LLC.*, (Doc. 36), be **DENIED** and Defendants' *DanCar Energy Construction LLC and National Specialty Insurance Company's Motion to Vacate Default*, (Doc. 41), be **GRANTED**.

## I.     Factual Background

In late 2016, Trailhead Engineering, LLC ("Trailhead") entered into a construction agreement with Sendero Carlsbad Midstream, LLC to build a cryogenic natural gas plant in Loving, New Mexico. (Doc. 41 at 3). Trailhead, as the original contractor on the

project, subcontracted with Defendant DanCar for labor, equipment, and materials to be used on the construction project. *Id.* In preparation for this project, DanCar entered into an indemnity agreement in favor of Defendant NSIC, wherein NSIC agreed to issue payment bonds to assist DanCar with financing for the construction project. *Id.* at 2.

In 2017, DanCar entered into a subcontractor agreement with Plaintiff Benchmark to provide electrical contracting services for the construction project. (Doc. 36 at 2). After disputes regarding Benchmark's work on the project, DanCar terminated the contract with Benchmark. (Doc. 41 at 4). DanCar and Benchmark entered into a settlement agreement for the amount owed to Benchmark for labor and materials furnished in connection with the construction project. (Doc. 36 at 2). In total, DanCar agreed to the payment of $1,645,470 for Benchmark's contributions. *Id.*

In early 2018, Trailhead terminated DanCar from the construction project. (Doc. 41 at 5). To date, DanCar claims it is owed over $8 million for its work on the construction project. *Id.* at 6. Since being terminated from the project, DanCar has ceased business operations because of insolvency. *Id.* Benchmark now alleges DanCar still owes $548,495 on the parties' settlement agreement. (Doc. 36 at 2).

## II.    Procedural Posture

On May 9, 2018, Benchmark filed its Complaint alleging breach of contract against DanCar and "debt and money due on payment bonds" against both DanCar and NSIC. (Doc. 1 at 2-4). On May 15, 2018, a summons was returned executed by DanCar, the date of service reflecting May 11, 2018 and an answer due date set for June 1, 2018. (Doc. 4). Over three months later, with no further action taken in the case, the Court entered an *Order to Show Cause*, instructing Benchmark to "notify the Court

in writing why this case should not be dismissed for want of prosecution." (Doc. 5).

Benchmark filed a Response explaining that DanCar had been served but it could not locate NSIC's principle office and it therefore intended to effectuate service upon the Superintendent of Insurance. (Doc. 6 at 1). In addition, Benchmark filed a *Motion for Entry of Default*, requesting the Clerk of Court enter default against DanCar for its "failure to timely respond to [Benchmark's] Complaint in this action." (Doc. 7 at 1).

On August 31, 2018, the Clerk entered default against DanCar and shortly thereafter the Court quashed its *Order to Show Cause*. (Doc. 9); (Doc. 10). On October 11, 2018, the Court entered an *Order to Notify the Court of Status of Service*, explaining that the docket reflects "no further action has been taken by [Benchmark] regarding the remaining Defendant [NSIC], since the Court's first *Order to Show Cause* issued on August 20, 2018." (Doc. 12 at 1). In response, Benchmark filed an *Application for Alias Summons*, requesting the "Clerk issue alias summons to Defendant [NSIC]." (Doc. 13 at 2). In addition, Benchmark's counsel explained that "while [other matters] unfortunately diverted [his] attention," NSIC would soon be served after the Court renders its decision on the *Application for Alias Summons*. (Doc. 14 at 2). Shortly thereafter, the Court granted Benchmark's request for an alias summons and the Clerk's office issued the summons to NSIC. (Doc. 15); (Doc. 16); (Doc. 17); (Doc. 18). On January 15, 2019, NSIC filed its Answer. (Doc. 19). On May 30, 2019, after the Court conducted its Rule 16 scheduling conference and Benchmark filed its Motion for Default Judgment, DanCar filed its Answer. (Doc. 38).

### III.    Analysis

In its Motion for Default Judgment, Benchmark argues it is entitled to a default

judgment on the breach of contract claim against DanCar because DanCar did not answer its Complaint and "there is no just reason for delay in entry of final judgment against DanCar," pursuant to Federal Rule of Civil Procedure 54(b). (Doc. 36 at 6). In support of this argument, Benchmark contends DanCar's default "was not minor or technical," DanCar "cannot show excusable neglect," Benchmark is "potentially prejudiced by the delay," and DanCar "cannot establish any meritorious defenses to [the claim]." (Doc. 45 at 1-3). DanCar responds by rebutting each of Benchmark's conclusions and adding that "a substantial amount of money [is] at stake." (Doc. 40 at 1-5). In their cross-Motion to Vacate Default, DanCar and NSIC argue the Clerk's entry of default should be vacated because it was not willful, Benchmark will not suffer prejudice by setting aside the default, and DanCar has meritorious defenses which it should be allowed to substantively present before the Court. (Doc. 41 at 1).

Federal Rule of Civil Procedure 55 sets forth a two-step process for securing a default judgment. First, a party must obtain a Clerk's entry of default. Fed. R. Civ. P. 55(a); *see also Watkins v. Donnelly*, 551 Fed.Appx. 953, 958 (10th Cir. 2014) (unpublished) ("Entry of default by the clerk is a necessary prerequisite that must be performed before a district court is permitted to issue a default judgment."). Second, the party may either motion the Clerk to enter a default judgment if the claim is for a "sum certain" or, "in all other cases, the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(1)-(2).

Given the harshness of imposing a default judgment, "due process requires that failure to comply with court orders [] must be the result of willfulness, bad faith, or [] fault of the petitioner." *In re Rains*, 946 F.2d 731, 733 (10th Cir. 1991) (internal citations

omitted). Courts agree that default judgments are a "harsh sanction" and are not generally used "purely as a penalty for delays in filing or other procedural error." *Id.* (collecting cases). Rather, a default judgment is normally available "only when the adversary process has been halted because of an essentially unresponsive party." *Id.* The remedy provided by a default judgment serves to afford the diligent party certainty "lest he be faced with interminable delay." *Id.*

Conversely, to set aside an entry of default, the Court may consider "whether the party willfully defaulted, whether setting aside the entry of default would prejudice the non-movant, and whether the movant has presented a meritorious defense." *Pinson v. Equifax Credit Info. Serv. Inc.*, 316 Fed.Appx. 744, 750 (10th Cir. 2009) (unpublished). In addition, the standard for setting aside an entry of default under Rule 55(c) is fairly liberal because "[t]he preferred disposition of any case is upon its merits and not by default judgment." *Gomes v. Williams*, 420 F.2d 1364, 1366 (10th Cir. 1970). The Court is granted considerable discretion in considering a motion to set aside a Clerk's entry of default. *Pinson*, 316 Fed.Appx at 749.

In the present matter, DanCar has appeared and answered Benchmark's Complaint. *See* (Doc. 38). In addition, DanCar has asserted its own meritorious defenses in response to Benchmark's allegations and disputes a number of facts central to the claims at issue – including the defense that it is not liable under the parties' settlement agreement. *Id.* at 1-7; (Doc. 40 at 2). While the parties disagree on the applicability of DanCar's alleged defenses, this dispute signals the need for further litigation to resolve the claims at issue. *See* (Doc. 43 at 5-10); (Doc. 41 at 12-16). The need for additional litigation in this matter is further supported by the amount in

controversy, which according to Benchmark's calculation, is over $700,000. (Doc. 36 at 9). The existence of meritorious defenses, coupled with the harshness of imposing a six-figure judgment against DanCar, weighs in favor of denying Benchmark's request for a default judgment.

In addition, DanCar's default was not the result of malicious intent to undermine the judicial process. Rather, DanCar explained that it became insolvent over a year ago and it does not have the resources to retain counsel to provide a defense in this action. (Doc. 41 at 6). Notably, the Clerk entered default against DanCar before NSIC had been served with the summons and Complaint, foreclosing NSIC's opportunity to fund legal counsel on behalf of DanCar until after default had already been entered. *Id.* Once NSIC learned of DanCar's inability to retain counsel or defend itself, it agreed to finance the defense of DanCar and assist with litigation. *Id.* DanCar's insolvency, and NSIC's timely offer to assist in DanCar's defense, reasonably explains DanCar's delay in filing its answer. *See, e.g.*, *In re Rains*, 946 F.2d at 734 (explaining that before a district court may enter a default judgment, "due process requires that failure to comply with court orders [] must be the result of willfulness, bad faith, or [some] fault of the petitioner").

These facts coexist with Benchmark's failure to demonstrate any prejudice it has or will suffer as a result of DanCar's delay. Rather, Benchmark claims there is "*the potential for* lapse of witness memories and loss of evidence." (Doc. 43 at 5) (emphasis added). Notably, Benchmark alleges potential prejudice because of the lengthy period DanCar was in default but ignores the 219-day delay between its filing of the Complaint in this case and effectuating service on NSIC. *Compare* (Doc. 1) (Complaint, filed May 9, 2018) *with* (Doc. 18) (Acknowledgement of Service, filed December 14, 2018).

Indeed, the Court entered two separate Orders directing Benchmark to explain its own delays in failing to proceed with service. *See* (Doc. 5) (Order to Show Cause); (Doc. 12) (Order to Notify the Court). If Benchmark alleges it will suffer prejudice because of delayed litigation, most of that delay can be attributed to its own inaction. (Doc. 14 at 2) ("I acknowledge the service requirements could have been addressed sooner[]. [] [T]rial preparation and a two-day trial [] unfortunately diverted my attention from the above captioned matter after the previous report to this Court…").

Finally, DanCar has indicated to the Court that if it were permitted to proceed, it is "prepared to fully comply with all deadlines of the current schedule," and it will be litigating "the same defenses which have [already] been asserted by NSIC." (Doc. 48 at 5). In light of the lack of bad faith attributed to DanCar's delay and Benchmark's failure to demonstrate actual prejudice, the facts in this case weigh in favor of allowing DanCar to proceed in this litigation as a participating party. *See, e.g., Pinson*, 316 Fed.Appx. at 750 (finding the district court's decision to set aside an entry of default was "well within its discretion" when defendant "acted in good faith once it learned of the suit," the plaintiff "suffered no prejudice by setting aside the default," and the defendant "had several meritorious defenses").

### IV.     Recommended Disposition

In light of the foregoing, the Court **RECOMMENDS** Plaintiff Benchmark Electrical Solutions, Inc.'s *Motion for Default Judgment on First Cause of Action Against Defendant DanCar Energy Construction, LLC.*, (Doc. 36), be **DENIED** and Defendants' *DanCar Energy Construction LLC and National Specialty Insurance Company's Motion to Vacate Default*, (Doc. 41), be **GRANTED**.

8

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
THE HONORABLE CARMEN E. GARZA
CHIEF UNITED STATES MAGISTRATE JUDGE